WARREN METLITZKY (CA Bar No. 220758)
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel:    (415) 343-7100
Fax:    (415) 343-7101
Email: wmetlitzky@conmetkane.com

BETH A. STEWART (*pro hac vice*)
DAVID RANDALL J. RISKIN (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave., S.W.
Washington, DC 20024
Tel:    (202) 434-5000
Fax:    (202) 434-5029
Email:  bstewart@wc.com
Email:  driskin@wc.com

*Attorneys for Lyft, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| LAURIE SPANO,<br><br>Plaintiff<br><br>v.<br><br>LYFT, INC., a Delaware Corporation; and<br><br>DOES 1 through 50, Inclusive,<br><br>Defendants. | Case No. 3:24-cv-00799-AMO<br><br>**LYFT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Fed. R. Civ. P. 12(b)(1) & (6), 9(b)]**<br><br>Complaint amended:    April 29, 2024<br><br>Date:    August 1, 2024<br>Time:    2:00 PM<br>Place:    San Francisco Courthouse<br>    Courtroom 10, 19th Floor<br><br>Judge:  Hon. Araceli Martínez-Olguín |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT ................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 2

ALLEGATIONS ............................................................................................................................. 3

ARGUMENT .................................................................................................................................. 4

I.  PLAINTIFF'S COMMON-CARRIER, VICARIOUS-LIABILITY, AND NON-
DELEGABLE-DUTIES THEORIES FAIL UNDER GOVERNING TEXAS LAW ............. 4

    A.  Lyft Cannot Be Liable as a Common Carrier. ................................................. 6

    B.  Lyft Is Not Vicariously Liable for the Driver's Criminal Conduct. ............................ 7

II.  THE MISREPRESENTATION, NEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS, AND CONTRACT CLAIMS FAIL ................................................................... 10

    A.  Plaintiff Has Not Alleged Any Actionable Misrepresentation or Fraud.................... 11

    B.  Negligent Infliction of Emotional Distress Is Not an Independent Claim................. 15

    C.  Plaintiff Has Not Alleged Any Contract or Breach. ..................................... 15

III.  PLAINTIFF'S STATUTORY UNFAIR-COMPETITION CLAIM FAILS ........................ 16

CONCLUSION............................................................................................................................. 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ahern v. Apple Inc.*, 411 F. Supp. 3d 541 (N.D. Cal. 2019) .................................................. 11, 12, 14

*Arno v. Club Med Inc.*, 22 F.3d 1464 (9th Cir. 1994) .......................................................... 4, 6

*Baker v. Great Northern Energy, Inc.*, 64 F. Supp. 3d 965 (N.D. Tex. 2014) ............... 11, 13, 14, 15

*Brackett v. American Airlines Group Inc.*, 2021 WL 3514012 (N.D. Cal. Aug. 10, 2021) .............. 15

*Brown v. Bank of America, N.A.*, 2018 WL 6164288 (C.D. Cal. Aug. 2, 2018) .............................. 12

*Campbell v. RaceTrac Petroleum, Inc.*, 2021 WL 4552253 (N.D. Tex. Oct. 5, 2021) ................. 9, 10

*Cassirer v. Thyssen-Bornemisza Collection Foundation*, 89 F.4th 1226 (9th Cir. 2024) ................... 5

*Contreras v. Waffle House, Inc.*, 2002 WL 1477442 (N.D. Tex. July 9, 2002) ................................. 9

*Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996 (S.D. Cal. 2021)........................................ 12

*Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156 (N.D. Cal. 2021) .......................................... 12, 13

*Cummins v. Lollar*, 2014 WL 12585644 (N.D. Tex. July 22, 2014) .................................................. 15

*Deitz v. Comcast Corp.*, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) .......................................... 16

*Doe v. Geo Group, Inc.*, 2017 WL 835209 (W.D. Tex. Mar. 2, 2017) .......................................... 7, 8

*Doe v. Match.com*, 789 F. Supp. 2d 1197 (C.D. Cal. 2011) .......................................................... 16

*Doe v. Uber Technologies, Inc.*, 551 F. Supp. 3d 341 (S.D.N.Y. 2021) .......................................... 13

*Donahue v. Melrose Hotel*, 1997 WL 148012 (N.D. Tex. Mar. 26, 1997).................................... 9, 10

*Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734 (N.D. Tex. June 3, 2014)......................... 14

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .................................................. 11

*Linenweber v. Southwest Airlines Co.*, --- F. Supp. 3d ----,
     2023 WL 6149106 (N.D. Tex. Sept. 19, 2023)........................................................................ 12

*M.D.C.G. v. United States*, 956 F.3d 762 (5th Cir. 2020) .................................................. 7, 8

*Muse Brands, LLC v. Gentil*, 2015 WL 4572975 (N.D. Cal. July 29, 2015).................................... 13

*In re Plains All American Pipeline, L.P. Securities Litigation*,
     245 F. Supp. 3d 870 (S.D. Tex. 2017) .................................................................................... 12

*In re Lyft Inc. Securities Litigation*, 484 F. Supp. 3d 758 (N.D. Cal. 2020)................................... 12

*Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649 (5th Cir. 1994)............................................. 9, 10

*Rodgers v. Ocwen Loan Servicing, LLC*, 2015 WL 8003209 (N.D. Tex. Dec. 7, 2015)................... 15

*Rodriguez v. FCA US LLC*, 2023 WL 3150075 (C.D. Cal. Mar. 21, 2023) ............................... 16, 17

*Rogers v. Lowe's Home Centers, Inc.*, 2023 WL 2815154 (E.D. Tex. Apr. 6, 2023) ................... 9, 10

*Ryan v. Brookdale International Systems, Inc.*,

      2007 WL 3283655 (S.D. Tex. Nov. 6, 2007) ................................................................. 11, 13

*Sharifan v. NeoGenis Labs, Inc.*, 622 F. Supp. 3d 478 (S.D. Tex. 2022)................................... 12, 13

*Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007) ......... 17

*Stewart v. Electrolux Home Products, Inc.*, 304 F. Supp. 3d 894 (E.D. Cal. 2018)......................... 14

*Turrey v. Vervent, Inc.*, 2023 WL 6390620 (S.D. Cal. Sept. 29, 2023)............................................ 17

*Webb v. Everhome Mortgage*, 704 F. App'x 327 (5th Cir. 2017) ..................................................... 12

*White v. Social Security Administration*, 111 F. Supp. 3d 1041 (N.D. Cal. 2015).......................... 15

*Wilson v. Korth Direct Mortgage, Inc.*, 2023 WL 8569084 (N.D. Tex. Dec. 11, 2023).................... 7

*Yamauchi v. Cotterman*, 84 F. Supp. 3d 993 (N.D. Cal. 2015) ....................................................... 12

## STATE CASES

*AEP Texas Central Co. v. Arredondo*, 612 S.W.3d 289 (Tex. 2020) ................................................. 8

*BankDirect Capital Finance, LLC v. Plasma Fab, LLC*, 519 S.W.3d 76 (Tex. 2017)....................... 6

*Baptist Memorial Hospital System v. Sampson*, 969 S.W.2d 945 (Tex. 1998) ................................. 8

*Boyles v. Kerr*, 855 S.W.2d 593 (Tex. 1993)................................................................................... 15

*Buck v. Blum*, 130 S.W.3d 285 (Tex. App. 2004)............................................................................. 7

*Cansino v. Bank of America*, 224 Cal. App. 4th 1462 (2014) ..................................................... 11, 12

*Castro v. Budget Rent-A-Car System, Inc.*, 154 Cal. App. 4th 1162 (2007) ...................................... 5

*Chen v. Los Angeles Truck Centers, LLC*, 42 Cal. App. 5th 488 (2019)............................................ 5

*Doe v. Lyft, Inc.*, 176 N.E.3d 863 (Ill. App. Ct. 2020)...................................................................... 6

*Disney Enterprises, Inc. v. Esprit Finance, Inc.*, 981 S.W.2d. 25 (Tex. App. 1998) ....................... 10

*Gaspard v. Cox*, 583 S.W.2d 877 (Tex. App. 1979)......................................................................... 8

*Gessell v. Traweek*, 628 S.W.2d 479 (Tex. App. 1982) .................................................................... 8

*Goolsby v. Kenney*, 545 S.W.2d 591 (Tex. App. 1976)..................................................................... 8

*Home Telephone & Electric Co. v. Branton*, 7 S.W.2d 627 (Tex. App. 1928) .................................. 9

*Hernandez v. Burger*, 102 Cal. App. 3d 795 (1980)..................................................................... 5

*KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175 (Tex. 2019) ........................................... 6

*Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal. 4th 291 (1995) .................................... 7

*Loyd v. Herrington*, 182 S.W.2d 1003 (Tex. 1944).................................................................... 8

*McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 (2010)................................................................. 5

*Offshore Rental Co. v. Continental Oil Co.*, 22 Cal. 3d 157 (1978)............................................... 5, 6

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (1993) ....................................................... 15

*San Diego Gas & Electric Co. v. Superior Court (Covalt)*, 13 Cal. 4th 893 (1996) .............................

*Sheffield v. Central Freight Lines, Inc.*, 435 S.W.2d 954 (Tex. App. 1968)....................................... 9

*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011) ................................................................. 10

*Textron v. Travelers Casualty & Surety Co.*, 45 Cal. App. 5th 733 (2020)....................................... 11

*Tindell v. Murphy*, 22 Cal. App. 5th 1239 (2018).................................................................. 13

*Wal-Mart Stores, Inc. v. Itz*, 21 S.W.3d 456 (Tex. App. 2000) ..................................................... 9, 10

## STATUTES & RULES

California Business & Professional Code § 17200 ...................................................... 1, 4, 16

California Public Utilities Code § 1759 ................................................................... 17

California Public Utilities Code § 5354 ................................................................... 10

California Public Utilities Code § 5431 ................................................................... 10

Federal Rule of Civil Procedure 9 ............................................................... 1, 11, 12, 13

Federal Rule of Civil Procedure 12 ............................................................................ 1

Texas Occupations Code § 2402.002.................................................................. 2, 4, 5, 6

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE that on Thursday, August 1, 2024, at 2:00 PM, or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, in Courtroom 10 on the 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Araceli Martínez-Olguín, Lyft, Inc. will present a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) & (6) and 9(b).

The Court should dismiss the following claims with prejudice for the reasons detailed below: misrepresentation (Claim 2); negligent infliction of emotional distress (Claim 4); common-carrier negligence (Claim 5); breach of non-delegable duties (Claim 6); vicarious liability (Claim 7); breach of contract (Claim 8); and unfair competition (under California Business & Professional Code § 17200) (Claim 10).  (Dismissal with prejudice as to unfair competition would be as to a federal court's power to hear the claim.)

Lyft's motion is based on this notice and the memorandum of points and authorities below.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should dismiss with prejudice Plaintiff's causes of action for common-carrier negligence; vicarious liability; misrepresentation; negligent infliction of emotional distress; breach of contract; and unfair competition for failure to state a claim and, as to unfair competition, for lack of subject-matter jurisdiction.

## MEMORANDUM OF POINTS AND AUTHORITIES

Founded in 2012, Lyft became the first U.S. company to establish a peer-to-peer, on-demand transportation network—what the world now knows as "ridesharing."  Lyft's network, accessible through a digital application, created a marketplace enabling people seeking transportation to match with people providing rides.  Lyft, in effect, modernized and expanded the transportation call center, building a platform that allowed people providing rides to connect with people who needed them.

Safety is, and has been, at the heart of Lyft's mission.  From its inception more than a decade ago, Lyft's ridesharing network offered safety features that other transportation options did not.  Every rider using the Lyft network received information, including the driver's license plate, photo, and first name, before getting in the car.  Each trip produced a GPS log of the route and time, and riders had an opportunity to rate their ride and provide feedback once the ride was over.

Tens of millions of riders and millions of drivers use the Lyft network to arrange rides every year.  Those rides, unfortunately, are not immune from larger societal issues.  Plaintiff here alleges that in April 2023 she took a ride in Texas arranged through the Lyft platform while intoxicated.  She says the driver forced her to perform oral sex in the car.  But Plaintiff has not sued the driver; she instead has sued Lyft, seeking to hold it wholly liable for the driver's alleged actions.  Lyft is confident Plaintiff cannot prove her claims against Lyft; this motion addresses a subset of those claims, each of which—even now, after amendment and with the benefit of Lyft's prior dismissal arguments—fails:

*First*, Plaintiff's theories that Lyft is a common carrier and for vicarious liability founder under Texas law, which applies because Plaintiff is a resident of Texas and was injured by an alleged tort in Texas.  The Texas legislature has deemed transportation-network companies (like Lyft) and drivers on their platforms "not common carriers."  Tex. Occ. Code § 2402.002.  That forecloses any theory arising from Lyft's supposed common-carrier status.  Plaintiff's vicarious-liability claim fails because criminal conduct is outside the scope of any business relationship between Lyft and drivers on the platform.  That same principle dooms her separate non-delegable-duty cause of action.

*Second*, Plaintiff's causes of action for misrepresentation, negligent infliction of emotional distress, and breach of contract are meritless under both California and Texas law—which are not

substantively different as to these claims.

Plaintiff's misrepresentation theories fail for multiple reasons, including because Plaintiff alleges no actionable misrepresentation on which she relied.  Her general statements about Lyft's commitment to safety—and the snippets of unsourced material in her complaint—are insufficient to satisfy her burden, and non-actionable in all events.  The negligent-infliction-of-emotional-distress claim fails as a matter of law because neither California nor Texas recognize it as an independent cause of action.  (The theory, at most, duplicates her general-negligence theory.)  And Plaintiff's contract claim cannot stand because Plaintiff has not alleged any particular contract between her and Lyft, nor identified any specific alleged breach.

*Third*, Plaintiff's unfair-competition claim, dressed in nothing more than a recitation of its elements, fails at the threshold for lack of standing (because Plaintiff has not alleged the threat of an ongoing injury) and inability to establish equitable jurisdiction (because she pleads that this action is about seeking monetary damages, and thus she has an adequate remedy at law).

## ALLEGATIONS

Plaintiff asserts that in April 2023, after a golf tournament in Texas, her friend requested a ride for Plaintiff on the Lyft platform.  (First Am. Compl. (Apr. 29, 2024) [ECF 22], ¶ 134.) Plaintiff "recalls that she … vomited in the" car, and she alleges the "driver forced Plaintiff to perform oral sex" during the ride.  (Am. Compl. ¶ 135.)  Later, she contends, her friend found her "on the bathroom floor, topless [with] the bathroom faucet … running" and called an ambulance after Plaintiff told her what happened during the ride.  (Am. Compl. ¶ 136.)  Plaintiff says she received a SANE exam and other tests at the hospital (Am. Compl. ¶ 137), that the driver was "arrested after he was identified by both Plaintiff and her friend" (Am. Compl. ¶ 138), and that the "police investigation/prosecution is active and ongoing" (Am. Compl. ¶ 138).

Plaintiff filed suit on February 9, 2024, "to recover damages for the injuries she suffered" (Am. Compl. ¶ 8), alleging "serious harm … as a result of the wrongful acts and omissions of" Lyft (Am. Compl. ¶ 133)—including being "traumatized by" the assault, which "has severely impacted her daily life" (Am. Compl. ¶ 139)—and then amended her complaint in response to Lyft's motion to dismiss.  Eight of the amended complaint's 322 paragraphs specifically address Plaintiff's alleged

incident; the remainder deploy general allegations about Lyft.

The complaint asserts ten claims against Lyft, which fall into several categories:

- Negligence: general (Claim 1, which includes a distinct negligent hiring, retention, supervision, and entrustment theory); failure to warn (Claim 3); infliction of emotional distress (Claim 4); common carrier (Claim 5).

- Fraud: intentional misrepresentation and misrepresentation by omission (Claim 2).

- Vicarious liability: based on "other non-delegable duties" (Claim 6); for the "driver's torts" (Claim 7).

- Contract: breach of contract (Claim 8).

- Strict products liability: design defect and failure to warn (Claim 9).

- Unfair competition: California Business & Professional Code § 17200 *et seq*. (Claim 10).

## ARGUMENT

**I.    PLAINTIFF'S COMMON-CARRIER, VICARIOUS-LIABILITY, AND NON-DELEGABLE-DUTIES THEORIES FAIL UNDER GOVERNING TEXAS LAW**

Plaintiff's theory that Lyft is a common carrier (Claim 5; Am. Compl. ¶¶ 149(l), 150(o), 223 (suggesting common-carrier status)) is unavailable because by Texas statute, Lyft is "not [a] common carrier[]," Tex. Occ. Code § 2402.002.  Plaintiff's vicarious-liability claim (Claim 7) fails because the driver's alleged conduct is outside the scope of any employment.  (Drivers on the Lyft platform are independent contractors, but Lyft need not argue that status to prevail here; reserving its rights, Lyft does not argue the employee-contractor distinction here.)  Plaintiff's "other-non-delegable-duties" cause of action (Claim 6) similarly founders because a "scope-of-employment" limitation applies to that claim as well.  Because legal deficiencies foreclose Plaintiff's common-carrier, vicarious-liability, and non-delegable-duty theories, amendment would be futile and dismissal with prejudice is warranted.

* * * * *

When a district court hears state-law claims in diversity, the forum state's choice-of-law principles determine the governing law.  *Arno v. Club Med Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994).  Here, because Plaintiff brought her action in a California court against a California company

4

alleging an incident in Texas, California's choice-of-law test selects between California and Texas law. Under California's "governmental-interest" test for choice of law, the court first determines whether the potentially-applicable laws are different and, if so, asks which state has the greater interest in having its law applied. *See, e.g.*, *Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1234 (9th Cir. 2024). Applying that test here compels application of Texas law.

Regarding Plaintiff's common-carrier theory, a Texas statute provides that "transportation network companies [like Lyft] and drivers logged in to the company's digital network are not common carriers." Tex. Occ. Code § 2402.002. California's common-carrier statute, by contrast, does not expressly comment on a transportation-network company's liability. (Lyft disputes it would be a common carrier even under California law, but the Court need not decide that issue because California's governmental-interest test selects Texas law.) In light of this difference, Texas' predominant governmental interest controls. *See Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980) ("[W]ith respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest."). After all, when a plaintiff is a resident of a foreign state and was injured by a tort in that state, the foreign state has the greater interest in setting defendant's liability. *See, e.g.*, *Cassirer*, 89 F.4th at 1239–43 (explaining foreign state's "strong interest in 'establishing a reliable rule of law' to promote predictability, to allow actors operating within the jurisdiction's borders reasonably to rely on the jurisdiction's law, and to facilitate investment by entities operating within the jurisdiction" (quotation omitted)); *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 98–101 (2010) (same); *Castro v. Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1180–82 (2007) (same); *Offshore Rental Co. v. Cont'l Oil Co.*, 22 Cal. 3d 157, 168 (1978) (same).

Texas' not-a-common-carrier statute effectuates Texas' interest in attracting transportation network companies to do business in the state, both to "obtain tax and other revenue" and to "advance the opportunity of state residents to obtain employment and the products and services offered by out-of-state companies." *Chen v. L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 497–98, 502 (2019). California, by contrast, has little interest in regulating another state's relationship with a transportation-network company, particularly where the underlying conduct occurred outside California and involved a non-California plaintiff. *See Offshore*, 22 Cal. 3d at 168 ("At the heart of

Louisiana's denial of liability lies the vital interest in promoting freedom of investment and enterprise within [its] borders …. The imposition of liability on defendant[s], therefore, would strike at the essence of a compelling Louisiana [interest].").

Regarding vicarious liability (and the separate-but-related concept of the alleged general non-delegable duties), insofar as there are differences between California and Texas law, Texas law applies for similar reasons: Texas has the predominant interest in policing activity within the state and "reliably defining the duties and scope of liability of an employer doing business within its borders." *Arno*, 22 F.3d at 1468.

### A.    Lyft Cannot Be Liable as a Common Carrier.

Texas Occupations Code § 2402.002 is unequivocal that "[t]ransportation network companies and drivers" on their platforms "are not common carriers." This unambiguous statement precludes Lyft's possible status as a common carrier and thus forecloses Plaintiff's claim styled as "common carrier's non-delegable duty." Further, if a consequence of common-carrier status is being subject to heightened tort duties, then a consequence of not being a common carrier is not being subject to them. That effect flows from the language the Texas legislature chose for § 2402.002. *See BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 80 (Tex. 2017) ("[T]he truest manifestation of what lawmakers intended is what they enacted. The Legislature expresses its intent by the words it enacts and declares to be the law." (quotations omitted)). Nor would there be merit to an argument that § 2402.002 is silent about a transportation-network company's tort liability; that impermissibly would render the plain language of the provision superfluous, as it would strip it of meaning. *Contra KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 184 (Tex. 2019) (courts interpret "a statute [to] giv[e] effect to every word, clause, and sentence" and reject interpretations that would mean parts of it have "no real operation" (quotation omitted)). An Illinois appellate court interpreting a similar statute held as much, concluding that in "declaring that [transportation-network companies] are not common carriers," the statute "clearly and expressly exempt[ed rideshare companies] from the standards of liability that apply to common carriers." *Doe v. Lyft, Inc.*, 176 N.E.3d 863, 873–74 (Ill. App. Ct. 2020). So too here.

**B.      Lyft Is Not Vicariously Liable for the Driver's Criminal Conduct.**

Plaintiff's assertion that the driver engaged in criminal conduct—sexual battery—forecloses any vicarious liability for Lyft.  Although in some circumstances vicarious liability may lie for an employee's intentional torts, that only is the case when the tort "is closely connected with the employee's authorized duties." *Wilson v. Korth Direct Mortg., Inc.*, 2023 WL 8569084, at *2 (N.D. Tex. Dec. 11, 2023) (quotation omitted).  Courts in and of "Texas have repeatedly held that assault or sexual assault committed by an employee is outside the scope of … employment." *Id.* (collecting sources); *accord M.D.C.G. v. United States*, 956 F.3d 762, 769–70 (5th Cir. 2020) ("physical[] and sexual[] assault[s]" were "not working to advance [the] employer's business"); *Doe v. Geo Grp., Inc.*, 2017 WL 835209, at *2–3 (W.D. Tex. Mar. 2, 2017) (no vicarious liability because even though "work … necessarily implicates the authorized use of force," sexual assault would not "be committed 'in the accomplishment of a duty entrusted to the employee'"); *see also Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 300–02 (1995) ("deliberate sexual assault is fairly attributed … to 'propinquity and lust,'" even where work duties included "examining or touching patients' otherwise private areas").  That should be the end of the matter.

To circumvent this well-established law, Plaintiff first says the pleaded sexual misconduct was within the scope of the employment because she came into contact with her assailant in connection with him driving on the Lyft platform.  (Am. Compl. ¶ 222(a), (g).)  But the fact the alleged employment may have brought a perpetrator and victim together does not control; if, as here, the alleged employment "was only … a means for [an employee's] inappropriate personal gratification," there is no vicarious liability.  *Geo*, 2017 WL 835209, at *3 (quoting *Buck v. Blum*, 130 S.W.3d 285, 289–90 (Tex. App. 2004)).  The intentional tort must be "committed in the accomplishment of a duty entrusted to the employee" for there to be such liability.  *M.D.C.G.*, 956 F.3d at 769 (quotation omitted).  Here, there is no connection between the driver's "duty" of providing a ride and sexual battery.  *See, e.g.*, *id.* (sexual assault "constituted such a deviation from his employer's goals that there was a complete absence of a causal connection between his actions and his authorized employment tasks [as border agent]").  These principles also dispose of Plaintiff's related assertion that the alleged perpetrator's role as a driver on the Lyft platform "placed him in a

position of power" that "he leveraged … to further the assault." (Am. Compl. ¶ 222(i)); *see M.D.C.G.*, 956 F.3d at 769–70 (agent's authority to detain and use force did not bring sexual battery within employment); *Geo*, 2017 WL 835209, at *2–3 (same for corrections officer's authority).

Plaintiff then shifts entirely, contending "[a]ny requirement that a tort be committed within the scope of employment does not apply because Lyft is a common carrier" or there are other non-delegable duties at issue. (Am. Compl. ¶ 223.) The former is wrong because Texas law, which deems Lyft not a common carrier, governs.

The latter is wrong because with regard to general non-delegable duties (an "exceedingly narrow" doctrine, *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 298 (Tex. 2020)), a principal only is liable for an independent contractor's negligence within the scope of the authorized work. "No recovery may be allowed for an injury resulting from an act or fault purely collateral to the work and which arises entirely from the wrongful act of the independent contractor …." *Goolsby v. Kenney*, 545 S.W.2d 591, 594 (Tex. App. 1976) (citing *Loyd v. Herrington*, 182 S.W.2d 1003, 1005 (Tex. 1944); *accord, e.g.*, *Gessell v. Traweek*, 628 S.W.2d 479, 481 (Tex. App. 1982) (adopting same principle as *Goolsby*); *Gaspard v. Cox*, 583 S.W.2d 877, 879 (Tex. App. 1979) (same); *see also AEP*, 612 S.W.3d at 297–98 (citing *Goolsby* for the same principle). In other words, scope of "employment" also governs the non-delegable-duty analysis, and thus Plaintiff's separate claim for "other non-delegable duties" fails as well.

Plaintiff separately argues vicarious liability under three other theories. None has merit.

*First*, she alleges apparent agency. (Am. Compl. ¶¶ 224–31.) Even were that doctrine available, it requires a showing that the Plaintiff "had a reasonable belief the driver was" Lyft's agent in engaging in the alleged misconduct, that Lyft's actions generated the belief, and that she "justifiably relied on the representation of authority." *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947–49 (Tex. 1998). She pleads none of these elements. No facts alleged in the complaint suggest she reasonably believed the driver was acting for Lyft when he engaged in the pleaded misconduct; none establishes Lyft took actions that would yield the belief the driver was given the authority by Lyft to engage in that misconduct; and none details why it would have been justifiable for her to rely on that (non-existent) authority. It is hard to see how a plaintiff ever could

offer those necessary allegations, and Plaintiff's amended complaint is inconsistent with them by conceding that Lyft understood "'[i]llegal, improper, or otherwise inappropriate activity … has and could continue to … harm [its] business.'" (Am. Compl. ¶ 127 (quoting 2022 Annual Report).)

*Second*, Plaintiff alleges that Lyft should be vicariously liable because it supposedly ratified "the torts committed by the drivers." (Am. Compl. ¶¶ 232–35.) But even if ratification were relevant to Plaintiff's vicarious-liability claim (the majority rule in Texas is that ratification speaks to direct, not vicarious, liability, *see Contreras v. Waffle House, Inc.*, 2002 WL 1477442, at *12 (N.D. Tex. July 9, 2002)), there are "'but a few situations'" where a company can become "'a wrongdoer by ratification'" when the underlying tort is "'assault and battery,'" *Campbell v. RaceTrac Petroleum, Inc.*, 2021 WL 4552253, at *7–8 (N.D. Tex. Oct. 5, 2021) (quoting *Sheffield v. Cent. Freight Lines, Inc.*, 435 S.W.2d 954, 956 (Tex. App. 1968)); *accord, e.g.*, *Home Tel. & Elec. Co. v. Branton*, 7 S.W.2d 627, 629 (Tex. App. 1928) (quoting same principle). And those arise only where the plaintiff demonstrates "the intentional tort was done in the employer's interest or was intended to further some purpose of the employer[]." *Donahue v. Melrose Hotel*, 1997 WL 148012, at *11 (N.D. Tex. Mar. 26, 1997); *accord Sheffield*, 435 S.W.2d at 956 (quoting same standard); *Home Tel. & Elec.*, 7 S.W.2d at 629 (same); *Rogers v. Lowe's Home Ctrs., Inc.*, 2023 WL 2815154, at *3 (E.D. Tex. Apr. 6, 2023) (same); *Campbell*, 2021 WL 4552253, at *7 ("Texas courts generally also require that the employee have committed the assault to further the interest of the employer for the employer to later ratify it."). Just as sexual assault is outside the scope of the relationship between Lyft and drivers on the Lyft platform, so too is sexual assault never in Lyft's interest. Plaintiff does not allege otherwise (nor can she, as her citation to the Annual report demonstrates).

Although the Fifth Circuit came to a different conclusion about Texas law in *Prunty v. Arkansas Freightways, Inc.*, suggesting that ratification may arise from acts outside the scope of employment, 16 F.3d 649, 652–53 (5th Cir. 1994), it did so without citing *Sheffield*, *Home Telephone*, or the authorities on which they relied. Thus when *Prunty* noted that "[v]ery few Texas appellate cases have discussed ratification in tort cases," *id.* at 653, it misstated the law—perhaps because, as the dissent noted, ratification was unpleaded, unargued, unproven, undecided, and unpreserved, *id*. at 656–60 & nn.2–6 (Garza, J., dissenting). (Another case, *Wal-Mart Stores, Inc. v.*

9

*Itz*, affirmed a jury verdict finding ratification of an intentional tort without citing any authority at all.  21 S.W.3d 456, 480–82 (Tex. App. 2000).)  This is why subsequent Texas federal district courts have rejected *Prunty*'s scope-free test, calling it "erroneous" and "not even remotely support[ed]" by Texas law.  *Donahue*, 1997 WL 148012, at *11 n.5.  And it is why those same courts have, after *Prunty*, dismissed ratification claims where the intentional conduct was not in the employer's interest.  *See Rogers*, 2023 WL 2815154, at *1 ("Of course, it's difficult to imagine how one employee's tortious assault of another employee could possibly 'further' [the defendant's] business, and [plaintiff] provides no factual assertions to support this extraordinary claim."); *Campbell*, 2021 WL 4552253, at *8 (assault a matter of "personal animosity"); *Donahue*, 1997 WL 148012, at *12 (no ratification because "feeding contaminated shrimp to [plaintiff] was not in the interest of [defendant], nor did it further any purposes of [defendant]").  The same result is warranted here.  Separately, there are no allegations that Lyft took any purportedly ratifying acts as regards the specific misconduct by the driver that Plaintiff pleads, which is an independent basis for rejecting ratification.  *See Disney Enters., Inc. v. Esprit Fin., Inc.*, 981 S.W.2d. 25, 31 (Tex. App. 1998) (ratification "will only bind the ratifier to the specific transaction that is ratified").

*Third*, Plaintiff says Lyft is vicariously liable under California Public Utilities Code § 5354. (Am. Compl. ¶¶ 236–40.)  But Texas law applies to Plaintiff's vicarious-liability claim, and a California statute does not regulate conduct in Texas.  *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206–09 (2011) (applying presumption against extraterritoriality); *see also* Cal. Pub. Util. Code § 5431(c) (applying to transportation-network companies "operating *in California*").  Moreover, § 5354 does not purport to create a general vicarious-liability scheme; rather, it is limited to vicarious claims arising from "construing and enforcing the provisions of th[e] chapter *relating to* the *prescribed privileges and obligations* of the holder of a permit."  None of the "prescribed privileges and obligations" is the subject of the vicarious-liability claim here.

## II.    THE MISREPRESENTATION, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND CONTRACT CLAIMS FAIL

Plaintiff cannot proceed on her claims for misrepresentation (Claim 2); negligent infliction of emotional distress (Claim 4); or breach of contract (Claim 8) under either California or Texas law.

10

Because these states' laws do not differ with respect to the issues raised by Lyft's arguments, California's choice-of-law rules favor "its own rules of decision." *Textron v. Travelers Cas. & Sur. Co.*, 45 Cal. App. 5th 733, 755 (2020) (quotation omitted). As these common-law claims fail for the same reasons Lyft detailed in its first motion to dismiss, amendment would be futile and the Court should dismiss them with prejudice.

### A.    Plaintiff Has Not Alleged Any Actionable Misrepresentation or Fraud.

Plaintiff purports to assert a claim "for both affirmative misrepresentation and misrepresentation by omission." (Am. Compl. ¶ 154.) Neither has merit and, indeed, both fail at the threshold because Plaintiff has not pleaded her claims with particularity, Fed. R. Civ. P. 9(b); missing is the required "who, what, when, where, and how" of the supposedly-fraudulent statements and her own purported awareness of them. *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 552 (N.D. Cal. 2019); *accord Ryan v. Brookdale Int'l Sys., Inc.*, 2007 WL 3283655, at *5 (S.D. Tex. Nov. 6, 2007). On that latter point, for example, Plaintiff fails to "specify when [s]he was exposed to" the alleged statements and "which ones" she purportedly "relied upon" in taking a ride arranged by another individual. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *accord Brookdale*, 2007 WL 3283655 at *6–7 (dismissing claims for failing to "indicate specifically where each advertisement and promotion … was seen" and for failing to allege "when an advertisement … was seen or heard"). Additional reasons foreclose Plaintiff's misrepresentation claim.

*1.    There are no actionable misrepresentations.* To prevail on an affirmative-fraud claim under either California or Texas law, plaintiffs must establish: "(1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damages." *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (2014); *accord Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 972–73 (N.D. Tex. 2014).

Plaintiffs primary misrepresentation theory appears to be that Lyft falsely stated passenger "safety is important" and the company's "top priority" (Am. Compl. ¶ 132). But the complaint does not say where these statements came from, their context, or even what the statements actually were. Rather, Plaintiff only says the "safe image" "cultivate[d]" by Lyft "suggests to customers, including Plaintiff, that riding while intoxicated with Lyft is safe." (Am. Compl. ¶ 120.) Plaintiff's failure to

11

identify any specific misstatement is fatal to her general-safety-statement theory: Without identifying a particular misrepresentation, she can prove none of the claim's required elements. *See Brown v. Bank of Am., N.A.*, 2018 WL 6164288, at *3 (C.D. Cal. Aug. 2, 2018); *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1018–19 (N.D. Cal. 2015) (dismissing claim); *Webb v. Everhome Mortg.*, 704 F. App'x 327, 329–30 (5th Cir. 2017) (affirming dismissal of Texas fraud claim). Nor would Plaintiff find refuge in an argument that by pleading supposedly false advertisements, Rule 9(b) does not apply. She "cannot simply refer to an amorphous advertising campaign and then claim that an unspecified advertisement … convinced [her]" to take a ride through the Lyft platform. *Sharifan v. NeoGenis Labs, Inc.*, 622 F. Supp. 3d 478, 493 (S.D. Tex. 2022); *accord Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1007 (S.D. Cal. 2021) ("Plaintiffs … fail to specify when they saw and relied on the alleged misrepresentations or misleading advertisements or labeling. Plaintiffs must identify a time period when they saw the false advertisements…. Plaintiffs must [also] specify where they saw each of the alleged false misrepresentations.").

Moreover, general safety statements of the type to which Plaintiff points cannot support a misrepresentation claim. Alleged false statements must "pertain to past or existing material facts," *Cansino*, 224 Cal. App. 4th at 1469, and must be "amenable to general verification or falsification," *Ahern*, 411 F. Supp. 3d at 557 (citation omitted); *see also In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 891 (S.D. Tex. 2017) ("generalized positive statements" are nonactionable "puffery"). Opinions that, for example, safety is "important" or "a top priority" do not surmount these hurdles. *See In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 770–71 (N.D. Cal. 2020) ("Lyft's statements regarding its commitment to safety" were not actionable because they "did not state that Lyft guaranteed safety, but instead emphasized its belief in the importance of trust and safety and its commitment to both."); *accord Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1177 (N.D. Cal. 2021) (statement that community residents experienced "a sense of security" was not actionable misrepresentation, but merely "vague or highly subjective" puffery); *Plains*, 245 F. Supp. 3d at 900 ("committed to public safety" nonactionable); *Linenweber v. Southwest Airlines Co.*, --- F. Supp. 3d ----, 2023 WL 6149106, at *5 (N.D. Tex. Sept. 19, 2023) (holding "generalized statements about prioritization of safety not actionable" (citation omitted)). That is why the court in

12

*Doe v. Uber Technologies, Inc.* found statements like Uber "is 'committed' to connecting consumers to the 'safest ride on the road' … aspirational puffery," yet found the statements that it "offers the 'safest rides on the road'—without any aspirational language—and … that it will 'set[] the strictest safety standards possible'" survived a motion to dismiss.  551 F. Supp. 3d 341, 368 (S.D.N.Y. 2021). Plaintiff has pleaded none of the latter (indeed, she has identified no specific statements at all).

Plaintiff also pleads a pair of more-specific supposedly-false pre-incident statements:  blog posts from 2015 and 2016.  (Am. Compl. ¶ 122.)  These do not save the misrepresentation claim. She never alleges the statements in the posts were false, or that Lyft believed them to be false.  *See, e.g.*, *Muse Brands, LLC v. Gentil*, 2015 WL 4572975, at *4–6 (N.D. Cal. July 29, 2015) (dismissing misrepresentation claims where plaintiff did not allege falsity or a lack of belief); *Baker*, 64 F. Supp. 3d at 973–74, 978–79 (similar).  Nor does Plaintiff say she saw either post (or even visited a Lyft blog), much less that she relied on either in taking the April 2023 ride arranged through the Lyft platform *by another person* (Am. Compl. ¶ 134).  *See Cork*, 534 F. Supp. 3d at 1178, 1183–84 (dismissing claims for lack of reliance); *Brookdale*, 2007 WL 3283655, at *7 (dismissing for failing to allege "when an advertisement … was seen or heard"); *see also Sharifan*, 622 F. Supp. 3d at 491 n.9 (noting "to surmount the hurdle of Rule 9(b), a plaintiff must describe the circumstances of … reliance with particularity" (quotation omitted)).  (Reliance would be difficult for her to plausibly allege, given the posts were from at least six years before a ride she did not personally request.) These pleading deficiencies foreclose her claim.

\* \* \* \* \*

Although Plaintiff's misrepresentation claim does not appear to encompass negligent misrepresentation (Am. Compl. ¶ 131 ("intentionally induces"); Am. Compl. ¶¶ 155–56 ("Lyft … knew" and "Lyft made … representations to induce women")), the general-negligence claim lists "market[ing]" practices as a breach (Am. Compl. ¶ 151(c)).  This bare allegation does not state a negligent-misrepresentation theory, which in all events would fail for the reasons detailed above. After all, the elements for that claim largely are the same as those of intentional misrepresentation (substituting only absence of a "reasonable ground for believing" the statement to be true for "knowledge of falsity").  *Tindell v. Murphy*, 22 Cal. App. 5th 1239, 1252 (2018); *accord Baker*,

64 F. Supp. 3d at 978 (plaintiff must show "defendant did not exercise reasonable care or competence in obtaining or communicating the information" (quotation omitted)).

**2.    *Plaintiff has not pleaded a viable misrepresentation-by-omission claim.*** To support her omissions theory, Plaintiff says Lyft "failed to disclose" that it "prioritized growth and driver supply over passenger safety" and did not "adequately protect passengers against sexual assault or harassment committed by drivers." (Am. Compl. ¶¶ 159–60.) These statements are insufficient for a viable claim, both because they are too vague to meet the heightened pleading standards for fraud by omission and because her own allegations foreclose her omissions theory.

Although pleading a fraudulent omission theory is "somewhat different from pleading an affirmative misrepresentation," Plaintiff "must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 906–07 (E.D. Cal. 2018) (quotation omitted); *see also Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 745 (N.D. Tex. June 3, 2014) (fraudulent-theory "typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading" (quotation omitted)). Taken on their own terms, the supposed omissions do nothing more than mirror the non-actionable alleged misrepresentations about safety. *See Ahern*, 411 F. Supp. 3d at 561 (alleged omission must be of a material "fact" (citation omitted)); *see also Baker*, 64 F. Supp. 3d at 974 (same). Just as the statements that "safety is important" and the company's "top priority" do not plead an affirmative fraud theory, including because they are not facts, so too do they not plead an omission theory when framed as Lyft failed to (supposedly) disclose that "safety is not important" and not the company's "top priority."

What is more, Plaintiff pleads herself out of her own theory. *First*, she asserts that "Lyft's … Annual Report (2022) makes [it] patently clear" that "Lyft is more interested in protecting its bottom line than protecting its drivers and riders" (Am. Compl. ¶¶ 126–27), which contradicts her allegation that Lyft failed to disclose it (purportedly) "prioritized growth and driver supply over passenger

14

safety." *Second*, Plaintiff notes that Lyft disclosed incidents of sexual assault and misconduct on the platform in an October 2021 Community Safety Report (Am. Compl. ¶ 124), which is inconsistent with the assertion that Lyft failed to disclose it did not "adequately protect passengers against sexual assault or harassment committed by drivers." Lyft published both documents before the April 2023 incident alleged in this action.

### B.    Negligent Infliction of Emotional Distress Is Not an Independent Claim.

Plaintiff brings a standalone claim for "negligent infliction of emotional distress," but California law knows "no independent tort of negligent infliction of emotional distress." *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1054 (N.D. Cal. 2015) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993)). Texas law is the same. *Cummins v. Lollar*, 2014 WL 12585644, at *3 (N.D. Tex. July 22, 2014). Under both jurisdictions' laws, negligent infliction of emotional distress is a negligence claim, *see White*, 111 F. Supp. 3d at 1054; *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993), and thus at best it duplicates Plaintiff's general-negligence cause of action (Claim 1). Dismissal with prejudice is warranted. *White*, 111 F. Supp. 3d at 1054; *Cummins*, 2014 WL 12585644, at *3.

### C.    Plaintiff Has Not Alleged Any Contract or Breach.

Plaintiff says in three spare paragraphs that she entered into an unspecified contract for "safe and reasonable transportation," and that Lyft breached unspecified "implied covenants inherent in such a contract." (Am. Compl. ¶¶ 241–43.) This unadorned boilerplate does not allege a cognizable claim under either California or Texas law. To proceed on a breach-of-contract claim, a plaintiff must plead, among other things, "the specific provisions in the contract creating the obligation the defendant is said to have breached." *Brackett v. Am. Airlines Grp. Inc.*, 2021 WL 3514012, at *2 (N.D. Cal. Aug. 10, 2021) (citation omitted); *accord Rodgers v. Ocwen Loan Servicing, LLC*, 2015 WL 8003209, at *3 (N.D. Tex. Dec. 7, 2015). Plaintiff has not done so. *See Brackett*, 2021 WL 3514012, at *2 (dismissing because "Plaintiff fail[ed] to identify the contractual terms that were allegedly breached"); *Rodgers*, 2015 WL 8003209, at *3 (dismissing because, among other failures, "plaintiffs do not point to any specific provision that the defendant breached" (citation omitted)); *Baker*, 64 F. Supp. 3d at 971 ("must point to a specific provision" (quotation omitted)).

15

Nor has she even said whether the allegedly breached contract was written, oral, or implied.  (If Plaintiff's theory is that she had an implied contract with Lyft because Lyft is a common carrier, that fails because Lyft is not a common carrier under governing Texas law.)

To be sure, Plaintiff asserts the "essence" of her contract with Lyft "was the payment of a fee … in exchange for safe and reasonable transportation to [her] destination." (Am. Compl. ¶ 241.) But this does not say anything about the specific provisions breached.  In any case, she concedes that she did not request the Lyft ride at all, foreclosing her contract claim entirely.  (Am. Compl. ¶ 134 ("Plaintiff's friend ordered a Lyft ….").)

### III.    PLAINTIFF'S STATUTORY UNFAIR-COMPETITION CLAIM FAILS

With nothing more than a bare recitation of the elements of an unfair-competition claim (Claim 10, under California Business & Professional Code § 17200 *et seq.*), Plaintiff demands "injunctive relief to prevent future unfair competition." (Am. Compl. ¶ 311.)  This dispositive pleading deficiency aside, her equitable theory founders at the threshold for at least two reasons:

*First*, Plaintiff lacks standing to bring an unfair-competition claim because she does not allege a concrete actual-and-imminent threatened injury.  Because she is seeking injunctive relief, the alleged injury must include a showing that she is "realistically threatened by a *repetition* of the [alleged] violation." *Deitz v. Comcast Corp.*, 2006 WL 3782902, at *3 (N.D. Cal. Dec. 21, 2006) (quotation omitted; emphasis in the original).  But Plaintiff nowhere says she intends to use the Lyft platform in the future, and her complaint is to the contrary.  She states that had she been aware "of the risks … associated with the use of the Lyft App," she "would not have engaged a ride through the Lyft App." (Am. Compl. ¶ 302.)  Because, by her own words, Plaintiff does not intend to use the Lyft platform going forward (now being aware of purported "risks … associated with" its use), she faces no realistic threat of a future violation and thus does not have standing.  *See Doe v. Match.com*, 789 F. Supp. 2d 1197, 1200–01 (C.D. Cal. 2011) (no standing to bring unfair-competition claim where plaintiff "suggest[ed] that she does not intend to use [Match.com's] services [in the] future").

*Second*, Plaintiff has not pleaded facts establishing the Court's equitable jurisdiction.  A "plaintiff seeking equitable relief under the [California unfair-competition statute] must demonstrate the inadequacy of a remedy at law." *Rodriguez v. FCA US LLC*, 2023 WL 3150075, at *3 (C.D. Cal.

16

Mar. 21, 2023).  Plaintiff does not allege an inadequate remedy at law, much less offer facts sufficient to make that showing.  And the amended complaint pleads otherwise, alleging that "Plaintiff brings this civil action to recover damages for the injuries … suffered as a result of being raped."  (Am. Compl. ¶ 8.)  As with the plaintiff in *Rodriguez*, Plaintiff seeks damages and then fails to "explain how likely or impending it is" that the harm will repeat, foreclosing equitable jurisdiction.  2023 WL 3150075, at *5.

The Court can dismiss the statutory unfair-competition claim on either of these non-merits bases, *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (court can address non-merits issues in any order); *Turrey v. Vervent, Inc.*, 2023 WL 6390620, at *3 (S.D. Cal. Sept. 29, 2023) (equitable jurisdiction non-merits), before reaching Plaintiff's failure to offer anything more than a bare assertion of the claim's elements.  (Were the claim to proceed past its threshold deficiencies, and were Plaintiff able to plead an actual claim, the claim would raise additional jurisdictional concerns, given that it asks the Court to make public policy regarding transportation-network companies the California legislature has vested exclusively in the California Public Utility Commission.  California Public Utilities Code § 1759 provides that "[n]o court … shall have jurisdiction" to "restrain[] or interfere with the commission in the performance of its official duties."  And "when the relief sought would … interfere[] with a broad and continuing supervisory or regulatory program of the commission," courts have "barred the action under section 1759."  *San Diego Gas & Elec. Co. v. Superior Ct. (Covalt)*, 13 Cal. 4th 893, 919 (1996).)

## CONCLUSION

For the reasons detailed above, the Court should dismiss with prejudice Plaintiff's claims for misrepresentation (Claim 2), negligent infliction of emotional distress (Claim 4), common-carrier negligence (Claim 5), breach of non-delegable duties (Claim 6); vicarious liability (Claim 7), breach of contract (Claim 8), and violation of California's unfair-competition law (Claim 10).

Dated:  May 20, 2024

Respectfully submitted,

By: _____

Warren Metlitzky (CA Bar No. 220758)
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel:    (415) 343-7100
Fax:    (415) 343-7101
Email: wmetlitzky@conmetkane.com

Beth Stewart (*pro hac vice*)
David Randall J. Riskin (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave., S.W.
Washington, DC 20024
Tel:    (202) 434-5000
Fax:    (202) 434-5029
Email:  bstewart@wc.com
Email:  driskin@wc.com

*Attorneys for Lyft, Inc.*

18